**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KIM VASQUEZ,

                         Plaintiff,

      - v -                             Civ. No. 9:16-CV-623
                                                  (LEK/DJS)

PETER RUSSELL and JACOB WHITNEY,

                        Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

KIM VASQUEZ
Plaintiff, *Pro Se*
Rockland County Jail
51 New Hempstead Road
New City, New York 10956

HON. BARBARA UNDERWOOD              MARK MITCHELL, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Kim Vasquez brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights in August and September 2015 while he was a patient at Central New York Psychiatric Center ("CNYPC"). Dkt. No. 41, Sec. Am. Compl. Defendants have now filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a). Dkt. No. 70. Defendants separately filed records

related to Plaintiff's hospitalization in support of their Motion. Dkt. No. 71. Plaintiff has submitted an opposition to the Motion, Dkt. No. 80, and Defendants filed a Reply. Dkt. No. 81. For the reasons that follow, the Court recommends **granting in part and denying in part** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Except where otherwise noted, the following material facts are undisputed.[1] While an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), Plaintiff was involuntarily committed to CNYPC pursuant to N.Y. Corrections Law § 402. Dkt. No. 70-1, Declaration of Mark Mitchell ("Mitchell Decl."), Ex. 2.[2] Plaintiff was admitted to CNYPC on August 12, 2015. Declaration of Jacob Whitney ("Whitney Decl."), ¶ 7. The following day Plaintiff was involved in an incident with staff at CNYPC that resulted in force being used against Plaintiff and him being physically restrained. *Id.* at ¶¶ 12-18. The facts and circumstances of this incident are disputed and are discussed in more detail below, but generally stated CNYPC staff contend that force was necessary to address Plaintiff's disruptive and assaultive behavior while Plaintiff alleges that

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id*. Plaintiff has not filed a responsive Rule 7.1 Statement, but makes numerous factual assertions contradicting the facts set forth by Defendants in his various submissions. In deference to Plaintiff's *pro se* status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

[2] This Exhibit is Docket No. 71-1 and is referenced herein by the docket number.

he was unnecessarily assaulted by staff. *Compare id. with* Mitchell Decl., Ex. 3, Deposition of Plaintiff ("Pl.'s Dep.") at pp. 79-80.

With the assistance of counsel, Plaintiff pursued relief under New York State law to have a court determine whether further retention at CNYPC was required. Dkt. No. 71-1 at p. 15. On September 15, 2015, following a hearing, a state court judge ruled that Plaintiff's retention at CNYPC was not necessary for his welfare and directed that he be released. *Id.* at pp. 15-16. The release order was received by staff at CNYPC that day. Affidavit of Thomas F. Umina ("Umina Aff."), ¶ 3. Staff at CNYPC then worked to develop a discharge plan for Plaintiff and notified DOCCS that he was to be released. *Id.* at ¶¶ 4-10. Plaintiff was transferred by DOCCS out of CNYPC on September 29th. *Id.* at ¶ 13.

## II. LEGAL STANDARDS

### A. Standard for Summary Judgment Motions

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials

of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc*., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v.*

*Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Admissibility of Declarations Offered by Defendants

In support of the Motion, Defendants have submitted a number of sworn declarations. Plaintiff objects that these documents are not admissible. Dkt. No. 80. Courts have repeatedly recognized that declarations made pursuant to 28 U.S.C. § 1746 provide admissible evidence that can be considered on a summary judgment motion. *Riehl v. Martin*, 2014 WL 1289601, at *5 (N.D.N.Y. Mar. 31, 2014); *Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436, 440 (N.D.N.Y. 2013); *Lakeview Outlets, Inc. v. Uram*, 1996 WL 571520, at *2 (N.D.N.Y. Oct. 2, 1996). The declarations filed in support of Defendants' Motion comply with section 1746 and are admissible evidence here.

### III. DISCUSSION

### A. Claims against Defendant Russell

Plaintiff alleges that Russell denied him due process because it took two weeks to transfer Plaintiff out of CNYPC. Sec. Am. Compl. at ¶ 21. Defendant Russell seeks summary judgment on the ground that he was not personally involved in the failure to transfer Plaintiff from CNYPC sooner, on the merits of the due process claim, and based on qualified immunity.

*1. Personal Involvement*

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Russell is named as a Defendant here because for part of the relevant time period he was the Interim Executive Director of CNYPC. Am. Compl. at pp. 1 & 6; Declaration of Peter Russell ("Russell Decl."), ¶ 1. Defendants offer evidence, unrefuted by Plaintiff, that following the state court order directing Plaintiff's release Russell had no role in the circumstances surrounding Plaintiff's discharge from CNYPC. Russell Decl. at ¶ 3; Umina Aff. at ¶ 8. The record thus establishes that Russell had no direct personal involvement in the alleged delay in Plaintiff's release.

Plaintiff offers two bases for nonetheless finding the requisite personal involvement. First is the mere fact of Russell's supervisory position. Dkt. No. 80 at ¶ 14 (noting that in "top position of [] facility" Russell had "Duty [sic] and obligation" to ensure compliance with laws).[3] It is well established, however, that a supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58

---

[3] Plaintiff also points out that Russell signed documents seeking Plaintiff's continued retention at CNYPC. The claim here, however, relates not to seeking retention, but only the delay in releasing Plaintiff.

F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

The other proffered basis for establishing Russell's personal involvement is Plaintiff's claim that he wrote Russell a letter seeking his release from CNYPC. Mitchell Decl., Ex. 6 at p. 2. "Receiving letters of complaint . . . and failing to respond is generally insufficient to establish personal involvement." *Johnson v. McKay*, 2015 WL 1735102, at *9 (N.D.N.Y. Apr. 16, 2015) (citing *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009)); *see also Chaney v. Vena*, 2017 WL 6756645, at *8 (N.D.N.Y. Nov. 29, 2017), *report and recommendation adopted*, 2017 WL 6734186 (N.D.N.Y. Dec. 29, 2017) ("If merely writing an unanswered letter to a superior officer were sufficient to establish personal involvement, it would contravene the black-letter principle that § 1983 does not allow for *respondeat superior* liability.")(internal quotation omitted) (citing cases).

Here, the particular facts further support the conclusion that this letter was insufficient to establish Russell's personal involvement. Russell denies having received the letter. Russell Decl. at ¶ 4. Plaintiff's letter to Russell is dated September 24, 2015. Mitchell Decl., Ex. 6 at p. 2. The facility mail disbursement form shows that the letter was received in the mailroom on September 25th. *Id.* at p. 3. Russell was not present at the facility on either day; instead he was in Albany attending meetings. Russell Decl. at ¶ 4. He retired from his employment with the State of New York on September 25th. *Id.* Plaintiff, therefore, fails to establish any basis on which the letter could establish Russell's personal involvement.

Accordingly, Plaintiff's due process claim against Russell should be dismissed for

lack of personal involvement.

### 2. Due Process

Nor, in any event, has Plaintiff established a due process claim sufficient to withstand summary judgment. Plaintiff does not appear to allege irregularities in the procedure used regarding his time at CNYPC, just that he was denied due process by not being immediately transferred after a New York State judge ordered his release. Sec. Am. Compl. at ¶ 21. Such a claim presents a substantive, rather than procedural, due process claim. *See Johnson v. Coughlin*, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997) (characterizing claim that prison officials failed to comply with court order directing release from Special Housing Unit as substantive due process claim).

In a substantive due process challenge "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847, n. 8 (1998). Under this standard "the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. at 847).

While the Court in *Johnson* noted that the "knowing refusal to obey a state court order" might violate substantive due process, *Johnson v. Coughlin*, 1997 WL 431065, at *6, the record in this case establishes nothing of the sort. On the contrary, the evidence in the

record demonstrates that following receipt of the Order directing Plaintiff's release from CNYPC, staff at that facility engaged in an established policy for developing a treatment and discharge plan. *See generally* Umina Aff. & Ex. Staff developed a discharge plan that would ensure a continuity of care upon Plaintiff's return to the custody of DOCCS. Umina Aff. at ¶ 4. Such a plan was developed and presented at the next meeting of CNYPC's discharge committee. *Id.* at ¶ 9. That meeting occurred on September 22, 2015 and DOCCS was notified the same day that Plaintiff was ready to be returned to DOCCS custody. *Id.* at ¶¶ 9-10. DOCCS, which then bore the responsibility for transferring Plaintiff to an appropriate correctional facility, notified CNYPC of Plaintiff's placement three days later, and transferred him to Downstate Correctional Facility on September 29th. *Id.* at ¶¶ 11-12. Far from arbitrary or conscience shocking, this process was directly related to Plaintiff's continued mental health care and was not unduly delayed. Accordingly, Defendant is also entitled to summary judgment on the merits of the due process claim.

Accordingly, the Court recommends granting Russell's summary judgment motion.

### B. Claims against Defendant Whitney

Plaintiff has two claims against Defendant Whitney - the alleged use of excessive force on August 13, 2015 and a related claim that the force was used to retaliate against Plaintiff for the exercise of his First Amendment rights. Defendant Whitney seeks summary judgment with respect to the excessive force and retaliation claims made against him. On the record before the Court, there are questions of fact which preclude summary judgment

as to those claims. Therefore, it is recommended that Defendant Whitney's Motion for Summary Judgment be denied.[4]

### 1. Excessive Force

Plaintiff is a convicted prisoner; as such, his claim for excessive force is analyzed under the Eighth Amendment. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *see also McClemore v. Bosco*, 2018 WL 1193308, at *21 (N.D.N.Y. Feb. 2, 2018), *report and recommendation adopted*, 2018 WL 1183384 (N.D.N.Y. Mar. 6, 2018) (applying Eighth Amendment standard to DOCCS inmate hospitalized at CNYPC). "The Eighth Amendment prohibition on cruel and unusual punishments precludes the unnecessary and wanton infliction of pain and protects inmates against the use of excessive force." *Jones v. Rock*, 2013 WL 4804500, at *17 (N.D.N.Y. Sept. 6, 2013) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). Eighth Amendment excessive force claims have both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d at 268 (quoting *Hudson v. McMillian*, 503 U.S. at 8). "The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the

---

[4] To the extent, however, that Plaintiff asserts any of these claims against Whitney in his official capacity, those claims should be dismissed as barred by the Eleventh Amendment. *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (citing cases).

challenged conduct." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (internal quotation marks omitted) (citations omitted).

Plaintiff alleges that he was physically assaulted, including being punched and kicked, by Whitney and two other, unidentified CNYPC staff members. Sec. Am. Compl. at ¶ 12. There is no dispute that an incident occurred during which force was used against Plaintiff. Whitney Decl. at ¶ 19. Defendant contends summary judgment is appropriate because he "acted in good faith, the restraint of Plaintiff was appropriate, and Plaintiff sustained no injuries." Dkt. No. 70-11, Defs.' Mem. of Law at p. 16. Whether or not the use of force was appropriate cannot be decided here because of the disputed facts. Defendant claims force was necessary because Plaintiff was unruly, had threatened staff, and ultimately punched a staff member. Whitney Decl. at ¶ 17. At his deposition, however, Plaintiff expressly denied much of what forms Defendant's justification for the use of force. He denied that he threatened any member of the CNYPC staff. Pl.'s Dep. at p. 79. He also denied that he punched a staff member. *Id.* at p. 80. While Defendant Whitney states that "[a]t no time was Mr. Vasquez punched, kicked, or assaulted," Whitney Decl. at ¶ 23, Plaintiff testified that he was punched and kicked. Pl.'s Dep. at pp. 81-83.

Additionally, while Defendant has offered medical evidence in support of his claim that Plaintiff had no injuries following this incident, *see generally* Joseph Decl., Plaintiff claims that after the incident he was bleeding, suffered a black eye, and suffered an injury resulting in a scar above his eye. Pl.'s Dep. at pp. 80 & 82; Dkt. No. 80 at p. 8. The Court

notes that even if Plaintiff had sustained no injury or that no injuries were reflected in the medical records that alone is not necessarily a basis on which to grant summary judgment because courts do not require, in every instance, "that injuries caused by the alleged use of excessive force be corroborated by medical records." *Berman v. Durkin*, 2017 WL 1215814, at *10 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017) (citing *Ninortey v. Shova*, 2008 WL 4067107, at *12 (S.D.N.Y. Sept. 2, 2008)); *see also McClemore v. Bosco*, 2018 WL 1193308, at *23 (N.D.N.Y. Feb. 2, 2018), *report and recommendation adopted*, 2018 WL 1183384 (N.D.N.Y. Mar. 6, 2018) (recognizing "the well-established principle that the absence of any serious injury from an alleged assault by prison personnel, while relevant, does not necessarily negate a finding that force has been applied wantonly and maliciously.")

Given that the parties dispute the facts regarding what led to the use of force at issue and the extent and amount of force used, this is not a case where the Court can determine as a matter of law that the use of force was reasonable. Accordingly, it is recommended that the Motion for Summary Judgment on Plaintiff's excessive force claim be denied.

### 2. Retaliation

Plaintiff's other claim against Defendant Whitney alleges that he was assaulted in retaliation for having asked to contact a lawyer. Sec. Am. Compl. at ¶ 12. Whitney denies this claim. Whitney Decl. at ¶ 26.

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action'." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). This is true because retaliation claims are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

Defendant makes several arguments in support of summary judgment. He argues that Plaintiff cannot establish either adverse action or causation. Defs.' Mem. of Law at p. 17. This argument is based, at least in part, on Defendant's submission that the use of force in this case was proper. *Id.* at p. 18. The questions of fact that preclude summary judgment on Plaintiff's excessive force claim, however, lead to a similar conclusion here. An assault can be an adverse action for purposes of a retaliation claim. *Flemming v. King*, 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016), *report and recommendation adopted*, 2016 WL 5173282 (N.D.N.Y. Sept. 21, 2016). As outlined above, questions of fact exist about the extent and nature of force used and what precipitated that force. Those same factual questions raise triable questions of fact as to whether the alleged assault constituted an

adverse action and was motivated by Plaintiff's request.

Defendant makes no argument that Plaintiff's request to speak to a lawyer was not a protected activity, arguing instead only that it was not "specifically targeted at Defendant Whitney." Defs.' Mem. of Law at pp. 17-18. There is no dispute that Whitney was present at the time the request was made, Whitney Decl. at ¶ 11, and so it unclear what more it is that Defendant believes was necessary. *See Alston v. Bellerose*, 2015 WL 4487973, at \*9 (D. Conn. July 23, 2015) (citing *Espinal v. Goord*, 558 F.3d 119, 122-30 (2d Cir. 2009)) (declining to dismiss claim when the "allegations support the inference that the named Defendants in this action were generally aware of Plaintiff's participation in a protected activity"). Here, Plaintiff claims that he requested to speak with an attorney and was immediately assaulted. Pl.'s Dep. at p. 78. While Defendants dispute this, viewing the evidence in the light most favorable to Plaintiff such a direct response is highly suggestive of a casual connection.

Accordingly, Defendant Whitney's Motion for Summary Judgment as to Plaintiff's retaliation claim should be denied.[5]

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 70) be **GRANTED as to Defendant Russell**; and it is further

---

[5] The questions of fact that exist on the merits of these claims likewise preclude finding that Whitney was entitled to qualified immunity.

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 70) be **GRANTED as to claims against Defendant Whitney in his official capacity and DENIED in all other respects**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[6] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   August 10, 2018
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).