UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KIM VASQUEZ,

                                Plaintiff,

    -against-                             9:16-CV-0623 (LEK/DJS)

JACOB WHITNEY, *et al.*,

                                Defendants.

## DECISION AND ORDER

**I.    INTRODUCTION**

Pro se plaintiff Kim Vasquez filed a civil rights complaint asserting claims arising out of his confinement at Central New York Psychiatric Center ("CNYPC"). Dkt. No. 2 ("Complaint"). Plaintiff has since filed two amendments to his initial Complaint. See Dkt. Nos. 8 ("FAC"), 41 ("SAC"). Following extensive motion practice, Plaintiff's only remaining claims are (1) his Eighth Amendment claim for excessive force against defendants John Doe I, John Doe II, and Jacob Whitney in his personal capacity; (2) his failure-to-protect claim against the defendant CNYPC John/Jane Doe Security Guards; and (3) his First Amendment claim for retaliation against John Doe I, John Doe II, and Whitney in his personal capacity. See Dkt. Nos. 40 ("April 2017 Order"), 89 ("Report and Recommendation"), 91 ("September 2018 Order").

**II.    BACKGROUND**

Briefly, Plaintiff asserts claims arising out of his August 12, 2015 involuntary committal to CNYPC. R. & R. at 2. On August 13, 2015, while still confined in that facility, Plaintiff "was involved in an incident with staff at CNYPC that resulted in force being used against [him]" and in his physical restraint. Id. The crux of the parties' ongoing dispute is whether the force applied

by the CNYPC officials was necessary to address Plaintiff's behavior, or whether it constituted an unnecessary and unlawful assault. Id. at 2–3.

Plaintiff, who is currently confined at Rockland County Jail, Dkt. No. 85, now seeks the following relief: (1) leave to amend the Complaint for a third time; (2) preliminary injunctions; (3) sanctions; (4) appointment of counsel; (5) service of pleadings upon John Doe I, John Doe II, and the CNYPC John/Jane Doe Security Guards (the "Doe Defendants"); and (6) an order revoking his authorization for defense counsel to review his medical information, Dkt. Nos. 74 ("First Motion for a Preliminary Injunction," "Motion to Amend," and "Second Motion to Appoint Counsel"), 82 ("Second Motion for a Preliminary Injunction"), 83 ("Motion for Sanctions"), 88 ("Third Motion for a Preliminary Injunction" and "Motion for Revocation of Authorization"), and 88-1 ("Motion for Service"). Defendants have opposed the Motion to Amend, Dkt. No. 78 ("Amendment Opposition"), as well as the First, Second, and Third Motions for Preliminary Injunction and Motion for Sanctions, Dkt. No. 84 ("Injunction and Sanctions Opposition").

## III.  MOTION FOR LEAVE TO AMEND[1]

Plaintiff's Motion to Amend seeks leave to incorporate new claims—arising out of his February 2018 arrest and confinement at Downstate Correctional Facility—against the following

---

[1] The Court notes that Plaintiff's motion has failed to comply with Rule 7.1(a)(4) of the Local Rules of Practice of the Northern District of New York, by failing to incorporate a complete proposed pleading that supersedes the original pleading in all respects. L.R. 7.1(a)(4). The Court could therefore deny the Motion to Amend on those grounds alone. McNeil v. U.S., 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by [pro se litigants] be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." (internal citations omitted)). However, bearing in mind the leniency properly shown to pro se litigants, the Court will nonetheless consider the Motion to Amend on its merits.

new defendants: the New York State Department of Corrections and Community Supervision ("DOCCS"), the New York State Office of Mental Health ("OMH"), Officer Daniel Amend, and an additional John Doe defendant. Mot. Amend at 1–4. Defendant opposes the motion on the grounds that it is procedurally deficient, untimely, and unrelated to Plaintiff's remaining claims. Amendment Opp'n at 1.

The filing of amended and supplemental pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) states that a party is free to amend its pleading once "as a matter of course" within twenty-one days after service or, "if the pleading is one to which a responsive pleading is required," within twenty-one days after service of either a responsive pleading or a Rule 12 motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"[D]espite the lenient standard of Rule 15(a)," the Second Circuit has held that "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). "The 'good cause' inquiry turns on the diligence of the party seeking to modify the scheduling order." Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (citing Parker, 204 F.3d at 340). "'A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline.'" Id. (quoting Christians of Cal., Inc. v. Clive Christian N.Y., LLP, No. 13-CV-275, 2014 WL 3605526, at *4 (S.D.N.Y. July 18, 2014)).

According to the mandatory pretrial scheduling order, filed September 9, 2016, the deadline for any application to join additional parties or to amend the pleadings was January 9, 2017. Dkt. No. 22 ("Scheduling Order") at 5. The Motion to Amend, which was filed more than fourteen months after the expiration of that deadline, is therefore subject to the "good cause" standard. However, the Court will not deny Plaintiff's motion on those grounds. All of the amendments now sought by Plaintiff relate to events which occurred after the January 9, 2017 motion deadline, during his confinement at Downstate. As a result, Plaintiff could not possibly have known about the events in question in advance of the deadline, and the Court has no reason to find that he has failed to act diligently in proposing his amendments.

That is not the end of the inquiry, however. Even when a plaintiff has acted diligently in proposing certain amendments, leave to amend should only be given "[i]n the absence of any apparent or declared reason—such as . . . undue prejudice to the opposing party by virtue of allowance of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "In deciding whether [] prejudice exists, courts evaluate whether the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000)). Courts in this Circuit have also considered whether the proposed amendments will expand the scope of discovery or necessitate additional discovery, see, e.g., Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 200 (S.D.N.Y. 2014), and whether the non-moving parties had prior notice of the claims to be amended, see, e.g., Monahan, 214 F.3d at 284.

The Court finds that granting leave to amend now would unduly prejudice Defendants, because (1) Plaintiff's motion to amend was filed nearly three years after he filed his original Complaint; (2) Plaintiff has already amended his pleading on two separate occasions; (3) the proposed amendments would vastly alter and expand the scope of discovery; and (4) the newly alleged facts, proposed defendants, and causes of action are wholly unrelated to the claims in the SAC. This last point is of particular importance—courts in this Circuit have held that "prejudice occurs if the opposing party would experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant." Henry v. Murphy, No. M–82, 2002 WL 24307, at *2 (S.D.N.Y. Jan. 8, 2002), aff'd, 50 F. App'x 55 (2d Cir. 2002). The amendments now requested by Plaintiff would constitute a wholesale reformation of his suit, with new defendants, new factual allegations, and new legal theories to be addressed. Those claims would therefore be better suited to a newly-filed lawsuit, rather than the present matter.

Consequently, Plaintiff's Motion to Amend is denied and the SAC remains the operative pleading.

## IV. MOTIONS FOR INJUNCTIVE RELIEF

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). "The district court has wide discretion in determining whether to grant a preliminary injunction." Id. at 511 (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992)). To succeed on a motion for preliminary injunctive relief, a plaintiff must demonstrate "'(a) irreparable harm and (b) either (1) likelihood of success on the

merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). However, when the moving party seeks a "'mandatory preliminary injunction that alters the status quo by commanding some positive act,'" "[t]he burden is even higher." Cacchillo v. Insmed, Inc., 638 F.3d 401, 406 (2d Cir. 2011) (quoting Citigroup, 598 F.3d at 35 n.4). "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Id. (quoting Citigroup, 598 F.3d at 35 n.4).

Generally, an alleged violation of a constitutional right creates a presumption of irreparable harm. Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996). But speculative, remote, or future injury cannot be grounds for an injunction. Los Angeles v. Lyons, 461 U.S. 95, 111–12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement "'must demonstrate that absent a preliminary injunction [(s)he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" Bisnews AFE (Thai.), Ltd. v. Aspen Research Grp. Ltd., 437 F. App'x 57, 58 (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)). Therefore, "a finding of irreparable harm cannot be based solely upon past conduct." Haden v. Hellinger, No. 14-CV-318, 2016 WL 589703, at *1 (N.D.N.Y. Feb. 11, 2016) (citation omitted).

"To prevail on a motion for preliminary injunctive relief, the moving party must [also] establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." Candelaria v. Baker, No. 00-CV-912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted). And, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." Fisher v. Goord, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 846–47 (1994)).

Construed liberally, Plaintiff's First, Second, and Third Motions for a Preliminary Injunction (the "Injunction Motions")[2] request an "order of protection" enjoining OMH, the New York State Department of Health ("DOH"), and DOCCS from treating or "associating" with him. Second Mot. Prelim. Inj. at 2–4; Third Mot. Prelim. Inj. at 2. Plaintiff alleges that the aforementioned entities are retaliating against him, stalking him, harassing him, causing injury with handcuffs, and stealing his DNA. First Mot. Prelim. Inj. at 2; Second Mot. Prelim. Inj. at 3; Third Mot. Prelim. Inj. at 4.

Defendants have opposed the Injunction Motions because, first, they seek relief against three non-parties—OMH, DOH, and DOCCS—despite the fact that Plaintiff's only remaining claims are against Whitney and the Doe Defendants. Inj. & Sanctions Opp'n at 1. Rule 65(d) of the Federal Rules of Civil Procedure provides, in relevant part, that an "order granting an injunction . . . binds only . . . (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with"

---

[2] The cited page numbers for these documents refer to those generated by the Court's electronic filing system ("ECF").

the individuals named in (A) or (B). The Second Circuit has explained that the formulation of that rule was "designed to codify the common-law doctrine that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." Doctor's Assocs., Inc. v. Reinert & Duree, P.C., 191 F.3d 297, 302–03 (2d Cir. 1999) (internal quotation marks and citations omitted). Although Plaintiff rightly points out that Whitney is employed by OMH, one of the entities against which injunctive relief is sought, Third Mot. Prelim. Inj. at 2, there is no evidence that OMH may have aided or abetted Whitney in the alleged prohibited acts.

Second, Defendants argue that the Injunction Motions should be denied because they seek relief outside the scope of the SAC. Inj. & Sanctions Opp'n at 2. The Court agrees. In the SAC, Plaintiff asserts Eighth Amendment and First Amendment claims related to an incident that occurred at CNYPC in 2015. In the Injunction Motions, however, Plaintiff alleges facts related to his medical treatment by OMH, DOH, and DOCCS during his confinement in 2018 at Downstate. See First Mot. Prelim. Inj at 2–4; Second Mot. Prelim. Inj. at 3–5; Third Mot. Prelim. Inj. at 2–5. As a result, Plaintiff cannot "establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint," Candelaria, 2006 WL 618576, at *3, and his request for injunctive relief must be denied.

Furthermore, the Court finds that Plaintiff lacks standing to pursue the relief sought. It is well-settled in this Circuit that "[p]laintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016) (quoting Lyons, 461 U.S. at 111–12). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek

injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." Id. Here, Plaintiff's belief that he will likely suffer harm in the future—in the form of treatment and/or association with OMH, DOH, and DOCCS—is purely speculative. Allegations of future injury without more do not establish a real threat of injury. See Garcia v. Arevalo, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("Even if Plaintiff successfully shows that [certain alleged] beatings actually took place . . . this Court may not rest a finding of likelihood of future harm by granting a preliminary injunction based solely on past, illegal conduct.").

Based on the foregoing analysis, the Court concludes that Plaintiff has not sufficiently shown a need for preliminary injunctive relief in this matter. Accordingly, the First, Second, and Third Motions for a Preliminary Injunction are denied.

## V. SECOND MOTION TO APPOINT COUNSEL

Plaintiff also moves, for a second time, for the appointment of counsel. Second Mot. Appoint Counsel at 1.

28 U.S.C. § 1915(e) authorizes the courts to "request an attorney to represent any person unable to afford counsel." "When deciding whether to appoint *pro bono* counsel, however, a court must give deference to the limited resources available to serve the interests of the many indigent litigants who pursue claims before it. . . and should therefore not grant such applications indiscriminately but instead must exercise sound judgment and restraint when doing so." Dunn v. Albany Med. Coll., No. 09-CV-1031, 2010 WL 11527164, at *1 (N.D.N.Y. Feb. 23, 2010) (internal citations omitted). In addition, a number of factors must be considered before a court can undertake such an action:

> [A court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge v. Police Officers, 802 F.2d 58, 61–62 (2d Cir. 1986). None of those individual factors is controlling, however, and "'each case must be decided on its own facts.'" Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (quoting Hodge, 802 F.2d at 61).

On December 5, 2016, the Honorable Daniel J. Stewart, U.S. Magistrate Judge, denied Plaintiff's previous motion for the appointment of counsel. Dkt. Nos. 23 ("First Motion to Appoint Counsel"), 27 ("December 2016 Order"). Judge Stewart held as follows:

> At this preliminary stage, the Court is unable to determine whether Plaintiff meets the threshold requirement that at least some aspects of his claim are likely to be of substance. Plaintiff has not submitted any evidence supporting his claims. Even if the Court were to assume, for purposes of this Motion, that Plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's Motion at this time. For example: (1) the case does not present novel or complex issues; and (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action. The Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

Dec. 2016 Order at 4–5 (internal quotation marks and citations omitted). Judge Stewart therefore denied Plaintiff's First Motion to Appoint Counsel, but granted Plaintiff leave to renew should his circumstances change. Id. at 5.

The Court now finds that the circumstances of this dispute have changed substantially since the December 2016 Order. Most notably, the Report and Recommendation issued by Judge Stewart in August 2018 denied Defendants' motion for summary judgment as to Plaintiff's claims against Whitney in his personal capacity, R. & R. at 15, thereby effectively satisfying Hodge's threshold requirement that the indigent claimant's position is likely to be of substance. Hodge, 802 F.2d at 61. Furthermore, in comparing a statement of material facts filed by Defendants to contradicting factual assertions made by Plaintiff, Judge Stewart found that a question of fact precluded summary judgment because "the parties dispute the facts regarding what led to the use of force at issue and the extent and amount of force used." R. & R. at 12. Such a dispute—though hardly novel or inordinately complex when compared to similarly-situated civil rights actions—is precisely of the kind that tends to "implicat[e] the need for cross-examination." Hodge, 802 F.2d at 61. And, though Plaintiff has proven himself willing and able to file numerous letters and motions before the Court, the nature of the documents filed leads the Court to believe that, should this matter proceed to trial, Plaintiff will likely struggle to present his case in a manner that would allow for a just and fair adjudication.

That being said, "[i]n order to meaningfully exercise discretion as to whether or not appointment of counsel is warranted in this case, the court is in need of further information concerning [P]laintiff's household finances." Dunn, 2010 WL 11527164, at *1 (citing United States v. McQuade, 647 F.2d 938, 940 (9th Cir. 1981), cert. denied, 455 U.S. 958 (1982)). Although Plaintiff was previously granted leave to proceed with this action in forma pauperis ("IFP"), Dkt. No. 6, his circumstances seem to have changed substantially since that

December 2015 order.[3] Moreover, Plaintiff's second request for counsel is not accompanied by documentation substantiating his efforts to obtain counsel from the public and/or private sectors. See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173–74 (2d Cir. 1989) ("[T]he most important disability of the poor claimant may be not so much his lack of funds but his lack of practical access to attorneys. If the indigent plaintiff is a prison inmate or a homeless vagrant, he may have no effective means of bringing his claim to the attention of the lawyer marketplace to have its merits appraised." (citation omitted)).

The Court will therefore deny the Second Motion to Appoint Counsel, but will grant Plaintiff leave to renew it. Plaintiff is advised that any future motion seeking the appointment of counsel must contain, at a minimum, an affidavit detailing his household income and expenses and should disclose any efforts made by Plaintiff or his agents to obtain representation in the present action.

## VI. MOTION FOR SANCTIONS

Plaintiff charges the Attorney General's Office with falsifying records and moves for

---

[3] Most notably, Plaintiff's living circumstances seem to have changed on multiple separate occasions since December 2015. For example, on August 2017, Plaintiff advised the Court that he had been released from DOCCS custody and had moved to Texas. Dkt. No. 65. However, in February 2018, Plaintiff was charged with violating the terms of his release and was returned to DOCCS custody. Dkt. No. 74-1 at 2. Then, from March 2018 until June 2018, Plaintiff was incarcerated at Downstate Correctional Facility. Dkt. No. 74 at 1. On June 2, 2018, Plaintiff was released on parole. Commitment History for Vasquez, Kim, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, http://nysdoccslookup.doccs.ny.gov/ (search DIN field for "15-A-2737"). But on June 18, 2018, Plaintiff filed a notice of change of address indicating that he is currently confined at Rockland County Jail. Dkt. No. 85.

sanctions against Barbara D. Underwood, counsel for Defendants, charging that she was not properly identified as the attorney of record. Mot. Sanctions at 1, 3.[4]

Sanctions are governed by Rule 11 of the Federal Rules of Civil Procedure. Rule 11(a) requires that pleadings, motions, and other papers filed before a court be signed, either by an attorney of record or, if the party is unrepresented, by the pro se litigant. Fed. R. Civ. P. 11(a). "By presenting to the court a pleading, written motion or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). After notice and providing the non-moving party with a reasonable opportunity to respond, a court may impose an appropriate sanction for a violation of Rule 11(b). Fed. R. Civ. P. 11(c)(1). However, Rule 11 also requires that a motion for sanctions be served upon the offending party or counsel at least twenty-one days prior to its filing with the court. Fed. R. Civ. P. 11(c)(2); Perry v. Fischer, No. 08-CV-0602, 2010 WL 1235611, at *4 (N.D.N.Y. Mar. 2, 2010), adopted by 2010 WL 1235677 (Kahn, J.). This safe harbor provision is designed to provide the allegedly offending party with the opportunity to cure the defect and avoid the imposition of sanctions by "withdrawing or correcting the offending material." Perry, 2010 WL 1235611, at *4.

In this case, Plaintiff did not provide notice of his intention to pursue a request for sanctions. Accordingly, Plaintiff has failed to comply with the safe harbor provisions set forth in Rule 11, and his Motion for Sanctions is subject to denial solely on procedural grounds.

---

[4] The cited page numbers for this document refers to those generated by ECF.

Nonetheless, anticipating that Plaintiff may attempt to refile his motion, the Court will also address its merits.

To demonstrate a Rule 11 violation, the moving party must make "a showing of objective unreasonableness on the part of the attorney or client signing the papers." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009) (quoting Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir.1997)). However, Underwood has not submitted or signed any papers or pleadings in this action. Docket. Although Local Rule 83.2(a) requires that "[a]n attorney appearing for a party in a civil case shall promptly file with the Clerk a written notice of appearance," the Docket makes clear that all of Defendants' papers have been submitted and signed by Assistant Attorney General Mark G. Mitchell, who filed a Notice of Appearance on behalf of Whitney on June 6, 2017. Dkt. No. 56. The Court therefore finds that, because Mitchell remains Defendants' counsel of record, Underwood was not required to file a notice of appearance and Rule 11 sanctions are not available against her. Leventhal v. New Valley Corp., 148 F.R.D. 109, 112 (S.D.N.Y. 1993).

Plaintiff's Motion for Sanctions is therefore denied.

**VII. MOTION FOR SERVICE ON THE DOE DEFENDANTS**

Plaintiff moves for service of the operative pleading on the Doe Defendants. Mot. Service at 1.[5] In the December 2016 Order, Judge Stewart denied as premature Plaintiff's request for a Valentin Order[6] to assist with identifying the Doe Defendants, finding that "[p]rior to seeking

---

[5] The cited page numbers for this document refers to those generated by ECF.

[6] In Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997), the Second Circuit held that a pro se litigant is entitled to assistance from the district court in identifying defendants, especially when the litigant is incarcerated, and the district court "may pursue any course that it deems

14

intervention of the Court, Plaintiff must first attempt to ascertain the identities of these individuals through discovery with [] Defendant[s]." Dec. 2016 Order at 3. Judge Stewart also instructed Plaintiff, once he had learned the identity of the Doe Defendants, to "amend his Complaint to properly name [them] as [] defendant[s]." Id.

While Plaintiff claims that the Doe Defendants were identified, Mot. Service at 1, Plaintiff has not amended his pleading to name those defendants, has not provided the Court with their names, and does not reference the Doe Defendants in his Motion to Amend. "While the Court acknowledges its obligation to assist a pro se incarcerated litigant to obtain discovery in order to identify John Doe defendants, and to cause the summons and complaint to be served once the defendant is identified so that service can be effected, the plaintiff nonetheless retains the obligation to provide the necessary information to name or identify the defendant to serve him." Carpio v. Luther, No. 06-CV-857, 2009 WL 605300, at *1 (W.D.N.Y. Mar. 9, 2009) (internal citations omitted). It therefore remains Plaintiff's responsibility to provide the Court with sufficient information to identify and accomplish service on the Doe Defendants. Until Plaintiff fulfills those obligations, the Court will continue to deny any related requests as premature.

## VIII. MOTION FOR REVOCATION OF AUTHORIZATION

Finally, Plaintiff moves to "revoke [his prior] authorization" allowing defense counsel to review his medical records,[7] on the grounds that such access is violating Plaintiff's right to

---

appropriate to a further inquiry into the identity" of unknown defendants.

[7] The Scheduling Order ordered Defendants to provide Plaintiff with "copies of all documents and other materials in the[ir] care, custody, or control," and authorized the custodians of any documents containing "protected health information" to release that information "without

privacy as protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Mot. Revocation Authorization at 5.[8]

"A plaintiff waives his right to privacy in his medical records when he puts his medical condition at issue in a lawsuit." Gill v. Gilder, No. 95-CV-7933, 1997 WL 419983, at *4 (S.D.N.Y. July 28, 1997) (citing Doe v. Marsh, 918 F. supp. 580, 585 (N.D.N.Y. 1996)). Here, Plaintiff alleges that he was subjected to excessive force and retaliatory acts resulting in injury. Thus, Plaintiff has put his medical condition at issue, and his request for an order preventing the disclosure of his medical records is denied. See Crawford v. Manion, No. 96-CV-1236, 1997 WL 148066, at *1 (holding that, in a civil rights action, the "release of [a] plaintiff's medical records without authorization is permissible because [a plaintiff] waive[s] any right to privacy in his medical records by instituting a suit against the state in which his health and medical records were at issue").

## IX. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion to Amend (Dkt. No. 74) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's First, Second, and Third Motions for a Preliminary Injunction (Dkt. Nos. 74, 82, 88) are **DENIED**; and it is further

---

an authorization from [Plaintiff] for the purpose of providing copies to [Plaintiff]." Scheduling Order at 2–4.

[8] The cited page numbers for this document refers to those generated by ECF.

**ORDERED**, that Plaintiff's Motion for Sanctions (Dkt. No. 83) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Second Motion to Appoint Counsel (Dkt. No. 74) is **DENIED with leave to renew**; and it is further

**ORDERED**, that Plaintiff's Motion for Service (Dkt. No. 88-1) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion for Revocation of Authorization (Dkt. No. 88) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 28, 2018
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge